RICKY DOUGLAS HAYNES, JR.,

        Petitioner,

v.

                                   Case No: 6:15-cv-1392-Orl-28GJK
                                     (6:07-cr-54-Orl-28GJK &
                                      6:07-cr-73-28KRS)

UNITED STATES OF AMERICA,

        Respondent.

---

## ORDER

Petitioner Ricky Douglas Haynes, Jr. is again before the Court seeking post-conviction relief pursuant to 28 U.S.C. § 2255, and again he has a legitimate complaint. In 2007, this Court sentenced Mr. Haynes on five criminal charges, and after Mr. Haynes established through an initial § 2255 petition that the sentence on one of those counts was illegal, the Court resentenced him in 2012. The Presentence Report (PSR) showed that Mr. Haynes qualified as a career offender under § 4B1.1 of the United States Sentencing Guidelines ("USSG" or "Guidelines") and that he fell within criminal history category VI, with a resulting advisory guideline range of 322–387 months. The Court and its officers—the prosecutor, defense counsel, and the probation officer—dropped the ball by failing to notice that the PSR incorrectly counted prior convictions in determining Mr. Haynes's career offender eligibility and criminal history category. No challenge to the improper inclusion of convictions was raised at that time. The failure to make such a challenge at the 2012 resentencing constituted ineffective assistance of counsel in violation of the Sixth Amendment, entitling Mr. Haynes to relief on his second § 2255 petition.

## I. Procedural History

On April 18, 2007, the Government filed an indictment in case number 6:07-cr-54 [hereinafter Criminal Case 6:07-cr-54], charging Mr. Haynes with one count of possession with intent to distribute five grams or more of crack cocaine,[1] one count of using and carrying a firearm in furtherance of a drug trafficking crime,[2] and one count of possession of a firearm by a convicted felon.[3] (Criminal Case 6:07-cr-54, Doc. 1). One month later, on May 16, 2007, the Government indicted Mr. Haynes in a second case—number 6:07-cr-73 [hereinafter Criminal Case 6:07-cr-73]—on two counts of possession and distribution of five grams or more of crack cocaine.[4] (Criminal Case 6:07-cr-73, Doc. 1). On May 24, 2007, Criminal Case 6:07-cr-73 was transferred to the undersigned for consideration with Criminal Case 6:07-cr-54. (Criminal Case 6:07-cr-73, Doc. 17). From then on, the Court managed the cases together, though they were never formally consolidated. Mr. Haynes entered guilty pleas to all counts in both cases with no written plea agreement. (*See* Criminal Case 6:07-cr-54, Doc. 42; Criminal Case 6:07-cr-73, Doc. 44).

---

[1] 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

[2] 18 U.S.C. § 924(c)(1)(A).

[3] 18 U.S.C. § 922(g)(1).

[4] The offenses in Criminal Case 6:07-cr-73 were committed approximately four months after the offenses in Criminal Case 6:07-cr-54. But the conduct alleged in both indictments was complete in 2006. It is unclear why the Government did not file a single indictment or later seek a superseding indictment. It is also unclear why the parties did not agree to consolidate the actions. It is obvious that efficiency was not served by failing to do so.

## A. Initial Sentence—September 10, 2007

Pending sentencing, the Court ordered the Probation Office to prepare a PSR.[5] On September 10, 2007, after review of the PSR, the Court held a sentencing hearing. (*See* Criminal Case 6:07-cr-54, Docs. 56 & 156; Criminal Case 6:07-cr-73, Docs. 35 & 43).

The PSR calculated a guideline score showing that Mr. Haynes had a total offense level of 29 and fell within criminal history category VI. (*See* PSR ¶¶ 44 & 63). These calculations resulted in a guideline sentencing range of 151–188 months. But the Probation Office also determined that Mr. Haynes was eligible to receive an enhanced sentence under either the Armed Career Criminal Act ("ACCA")[6] or the career offender provisions of USSG § 4B1.1. (*Id.* ¶¶ 45–47). Because the § 4B1.1 career offender enhancement resulted in the highest range under the Guidelines, the Probation Office applied that enhancement. (*Id.* ¶ 47). With application of § 4B1.1's career offender provisions, Mr. Haynes remained in criminal history category VI[7] and scored an offense level of 37; that level was then reduced by 3 points pursuant to USSG § 3E1.1(a) and (b) for acceptance of responsibility, giving Mr. Haynes a total offense level of 34. (*Id.* ¶ 46). With these adjustments, the guideline sentencing range increased to 262–327 months, and after addition of the minimum consecutive 60-month penalty required by 18 U.S.C. § 924(c) for Count Two of Criminal Case 6:07-cr-54, the range became 322–387 months. (*Id.*).

---

[5] (Criminal Case 6:07-cr-54, Doc. 157; Criminal Case 6:07-cr-73, Doc. 123).

[6] 18 U.S.C. § 924(e)(1).

[7] (*See* PSR ¶ 64 (noting that under § 4B1.1, "a career offender's criminal history category in every case shall be Category VI")).

Section 4B1.1 clearly spells out the criteria for enhancement as a career offender. To qualify as a career offender, the Government must establish, among other things, that "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). In this case, the PSR identified three prior convictions to satisfy this requirement: (1) resisting arrest with violence in Case No. 94-32187 in the Circuit Court, Brevard County, Florida (sentencing date September 17, 1996); (2) carrying a concealed firearm in Case No. 99-1346 in the Circuit Court, Brevard County, Florida (sentencing date February 7, 2002); and (3) possession with intent to distribute cocaine base in Case No. 6:00-cr-182 in the United States District Court, Middle District of Florida, Orlando Division (sentencing date April 20, 2001). (PSR ¶ 45).

Mr. Haynes's attorney objected to the proposed finding that Mr. Haynes was eligible to be sentenced under the ACCA but did not object to Mr. Haynes being qualified for an enhanced sentence as a career offender under USSG § 4B1.1. (Criminal Case 6:07-cr-54, Doc. 156 at 4–8, 13; Criminal Case 6:07-cr-73, Doc. 43 at 4–8, 13). The Court did not sentence Mr. Haynes under the ACCA but instead applied the career offender provisions of USSG § 4B1.4(b) as recommended in the PSR. The Court sentenced Mr. Haynes to three concurrent terms of 322 months in prison in Criminal Case 6:07-cr-54, (Doc. 57 in that case), and to two concurrent terms of 322 months in prison in Criminal Case 6:07-cr-73, (Doc. 36 in that case). The sentences in both cases ran concurrent to one another, for a total of 322 months' imprisonment.

4

## B.    First Appeal—2007 to 2008

Mr. Haynes appealed the judgment and sentence, and appellate counsel filed an *Anders*[8] brief.    During the pendency of Mr. Haynes's appeal, the Eleventh Circuit reconsidered one of its prior decisions and held that a prior conviction in Florida for carrying a concealed firearm—one of the three predicate career offender offenses listed in Mr. Haynes's PSR—is not a "crime of violence" within the meaning of the career offender provisions of §§ 4B1.1 and 4B1.2 of the Guidelines. *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008); *see also United States v. Archer*, 243 F. App'x 564 (11th Cir. 2007) (initial opinion holding that carrying a concealed weapon does constitute a "crime of violence").    But aside from his prior carrying-a-concealed-firearm conviction, Mr. Haynes ostensibly still qualified as a career offender because the other two predicate prior convictions—resisting arrest with violence and possession with intent to distribute crack cocaine—appeared to be sufficient predicate offenses for career offender designation under USSG § 4B1.1.   *See United States v. Rolon*, 445 F. App'x 314, 328–29 (11th Cir. 2011) (resisting an officer with violence qualifies as a crime of violence for career offender sentencing); USSG § 4B1.2(b) (defining "controlled substance offense" for purposes of § 4B1.1).

On October 22, 2008, the Eleventh Circuit Court of Appeals, *per curiam,* affirmed Mr. Haynes's convictions and sentences, finding "no arguable issues of merit." _ *United States v. Haynes*, 297 F. App'x 856, 857 (11th Cir. 2008).

---

[8] *Anders v. California*, 386 U.S. 738 (1967).

## C. First 28 U.S.C. § 2255 Petition—July 6, 2009

On July 6, 2009, following his unsuccessful appeal, Mr. Haynes filed his first 28 U.S.C. § 2255 petition seeking relief on various grounds. (Civil Case 6:09-cv-1157, Doc. 1). Two of the grounds raised in the petition are germane here: (1) that the sentence imposed for the offense of felon in possession of a firearm (Count Three in Criminal Case 6:07-cr-54) exceeded the ten-year statutory maximum for that crime; and (2) that counsel was ineffective in not objecting to all three prior convictions forming the basis for career offender status. (Civil Case 6:09-cv-1157, Doc. 1 at 7 & Doc. 4 at 2–5). As to the latter ground, Mr. Haynes made a general and vague argument that the Government did not prove that he had been convicted of the qualifying felonies and that he had not actually committed those crimes. (Civil Case 6:09-cv-1157, Doc. 4 at 3–5). In other words, his challenge was only that the Government had not proved that he had committed the qualifying offenses.

The Government conceded that the sentence for felon in possession of a firearm was illegal and that Mr. Haynes should be resentenced for that offense. (Civil Case 6:09-cv-1157, Doc. 12 at 12). As to all other claims, the Government objected. (Civil Case 6:09-cv-1157, Doc. 12 at 9–13 & Doc. 21 at 7–11). In a written order, the Court addressed all of the issues Mr. Haynes raised in his § 2255 petition, as supplemented. (Civil Case 6:09-cv-1157, Doc. 36).[9] The Court granted relief to the extent that the sentence imposed for possession of a firearm by a convicted felon was illegal but denied relief on all other claims.

---

[9] The original order granting relief was entered on January 20, 2012. (Civil Case 6:09-cv-1157, Doc. 27). However, on April 25, 2012, that order was vacated due to a clerical error, and an amended order was entered. (Civil Case 6:09-cv-1157, Docs. 35 & 36).

(*See id.*).  The order directed the magistrate judge to appoint counsel to represent Mr. Haynes at the resentencing hearing, scheduled for April 26, 2012. (*See id.* at 17).

### D.    Resentencing Hearing—April 26, 2012

During the resentencing proceeding, newly appointed defense counsel asked the Court to restructure the sentence to conform to the Court's original sentencing intent. (*See* Criminal Case 6:07-cr-54, Doc. 133).  Counsel urged the Court to accomplish this by modifying the sentences imposed in Criminal Case 6:07-cr-54 to a 262-month sentence for Count One, a consecutive 60-month sentence for Count Two, and a concurrent 120-month sentence for Count Three. (*Id.* at 2–3).  Having determined that Mr. Haynes's other claims were meritless, the Court was cautious about modifying the sentences imposed in any other count.  But pursuant to *United States v. Watkins*, 147 F.3d 1294 (11th Cir. 1998), the Court ultimately agreed to restructure the sentences in Criminal Case 6:07-cr-54 and imposed the sentences requested by defense counsel and the Government.  (Criminal Case 6:07-cr-54, Doc. 133 at 8–11). The Court entered a new single judgment for both criminal cases reflecting the agreed-upon sentences. (Criminal Case 6:07-cr-54, Doc. 110; Criminal Case 6:07-cr-73, Doc. 89).

After the resentencing, defense counsel filed a notice of appeal. (Criminal Case 6:07-cr-54, Doc. 111).  Resentencing counsel then filed a motion to withdraw, which was granted, and the magistrate judge appointed the Federal Public Defender to represent Mr. Haynes on appeal. (Criminal Case 6:07-cr-54, Docs. 113 & 119).

### E.    Second Appeal—2012 to 2014

Represented by the Federal Public Defender, Mr. Haynes again appealed, and the Eleventh Circuit again affirmed. *United States v. Haynes*, 764 F.3d 1304 (11th Cir. 2014).

In the second appeal, Mr. Haynes asserted that he did not qualify as a career offender. Appellate counsel argued that the conviction for resisting arrest with violence should not have been used in qualifying Mr. Haynes as eligible for career criminal classification because the conviction was too old to count under USSG § 4A1.2(e) and (k). That, along with the Eleventh Circuit's 2008 *Archer* opinion removing carrying a concealed weapon as a potential predicate offense, left only one prior conviction—possession with intent to distribute cocaine—to be counted toward attempting to qualify Mr. Haynes as a career offender.

In its opinion affirming this Court's resentencing, the Eleventh Circuit declined to address Mr. Haynes's argument challenging his career offender enhancement. 764 F.3d at 1309. The appellate court stated that it was "an 'appropriate' remedy" for this Court to vacate only the sentence that exceeded the statutory maximum in Criminal Case 6:07-cr-54. *Id.* In doing so, the appellate court observed that any errors that occurred at the resentencing proceeding were "invited" by resentencing counsel. *Id.* Finally, the appellate court emphasized that Mr. Haynes's position on appeal that his career offender sentences were improper was an inconsistent position from that taken by counsel at resentencing. *Id.* at 1309–10. The court pointed out that the resentencing proceeding was limited given the scope of collateral relief and it was "dubious" that this Court should have corrected the sentences in Criminal Case 6:07-cr-73, especially in light of defense counsel's arguments that the Court would "not . . . touch the other case." *Id.* at 1310.

### F.     Second 28 U.S.C. § 2255 Petition—August 21, 2015

Following the unsuccessful appeal of the corrected sentence, Mr. Haynes filed the instant § 2255 petition (Doc. 1), which is now ripe for consideration.  In his motion and

8

accompanying memorandum of law (Doc. 6), Mr. Haynes makes four arguments for relief: (1) resentencing counsel was ineffective for failing to argue that his career offender enhancement and criminal history category are erroneous and that he is entitled to the application of the Fair Sentencing Act; (2) original sentencing counsel and appellate counsel were ineffective for failing to challenge his career offender enhancement and criminal history category; (3) his sentencing guidelines range was incorrectly determined; and (4) his prior convictions should have been charged in the indictment and found by a jury beyond a reasonable doubt. (Doc. 1 at 4–8). At oral argument, the parties addressed the legal and factual issues relevant to Mr. Haynes's claims. (*See* Mins., Doc. 41).

## II.    Legal Standards

The Sixth Amendment right to counsel is the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief because his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687–88. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [court proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689–90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

at 690; *accord Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989). A petitioner has the burden of showing counsel's performance fell below an objective standard of reasonableness based on "prevailing professional norms." *Strickland,* 466 U.S. at 688. And to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### III. Discussion

Mr. Haynes's second, third, and fourth claims do not require much discussion. In his second claim, Mr. Haynes contends that his Sixth Amendment right to effective assistance of counsel was violated when counsel failed to challenge the § 4B1.1 enhancement and criminal history category VI determination at the initial sentencing. Because the Court determines that Mr. Haynes is entitled to relief under the first claim, the Court does not address similar issues raised in the second claim. Mr. Haynes's third claim is a direct challenge to those errors, but he concedes that this claim is foreclosed by the Eleventh Circuit's decision in *Spencer v. United States*, 773 F.3d 1132, 1135 (11th Cir. 2014). (*See* Reply Mem., Doc. 35, at 12). His fourth claim—that enhancement was improper because the Government was required to charge and prove the predicate convictions and failed to do so—is also without merit. *See United States v. Ruo*, 943 F.2d 1274, 1275 (11th Cir. 1991) ("[P]redicate convictions need not be set out in the indictment nor proved beyond a reasonable doubt at trial . . . ."); *id.* at 1276 ("It would approach the absurd to require the government to undertake to prove guilt all over again in every predicate conviction."). Only Mr. Haynes's first claim pertaining to ineffective assistance of counsel at the 2012 resentencing warrants full discussion.

## A.    Erroneous Guideline Calculations

There is no disagreement as to the accuracy of the assertions Mr. Haynes makes in his first claim. Serious errors were made in calculating his guideline score that dramatically enhanced the advisory range, and no effort was made to correct those errors at resentencing. And but for those errors, there is more than a reasonable probability that Mr. Haynes would have received a sentence requiring him to spend substantially less time in prison.

### 1.    Career Offender Status

The guidelines provide that after the passage of specified periods of time, some convictions are not counted in calculating defendants' criminal histories or as predicate offenses for § 4B1.1 career offender enhancement. The Guidelines Manual explains that "[t]he provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1" in determining career offender eligibility. USSG § 4B1.2 cmt. n.3 (2011); *see also United States v. Shannon*, 449 F.3d 1146, 1148 (11th Cir. 2006) ("Prior felony convictions under section 4B1.1 are counted using the definitions and instructions for computing criminal history in section 4A1.2.").

According to USSG § 4A1.2(e)(1), a prior offense may be counted if the conviction resulted in a "sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense." And § 4A1.2(e)(2) provides that "any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted." But § 4A1.2(k)(2) goes on to explain:

> Revocation of probation . . . may affect the time period under which certain
> sentences are counted as provided in § 4A1.2(d)(2) and (e).    For the

purposes of determining the applicable time period, use the following: (A) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (see § 4A1.2(e)(1)); (B) in the case of any other confinement sentence for an offense committed prior to the defendant's eighteenth birthday, the date of the defendant's last release from confinement on such sentence (see § 4A1.2(d)(2)(A)); and (C) in any other case, *the date of the original sentence* (see § 4A1.2(d)(2)(B) and (e)(2)).

(Emphasis added). Thus, if a sentence imposed for violation of probation was less than one year and one month, the date of the initial probationary sentence—as opposed to the date of the sentence for the violation—must be used to calculate the age of the conviction.

Under these provisions, Mr. Haynes's prior conviction for resisting arrest was too remote in time to be included as a predicate offense for career offender status. It is clear from the record that on August 4, 1995, the state court initially sentenced Mr. Haynes to thirty months of probation for the offense of resisting arrest. It is also clear from the record that Mr. Haynes violated the terms of his probation and on September 17, 1996, the state court revoked his probation and sentenced him to one year in jail. Hence, the ten-year period commenced to run on August 4, 1995—the day he was originally sentenced to serve thirty months on probation—rather than on September 17, 1996, when his probation was revoked and he was sentenced to one year in jail. And the earliest date identified in the PSR for any of the offense conduct in the instant cases was May 2006, more than ten years after August 4, 1995. (*See* PSR ¶ 20; *see also* Haynes Mem., Doc. 6, at 7 (noting that "the 10-year window . . . opened in May 1996")).

Thus, two of the three offenses used in the PSR to qualify Mr. Haynes as a career offender were not predicate crimes. The carrying-a-concealed-firearm conviction was not a crime of violence, *see Archer*, 531 F.3d at 1349, and the resisting-arrest-with-violence conviction was outside the ten-year application period provided in § 4A1.2(e)(2). Based

on the record before the Court, Mr. Haynes was not a career offender when he was resentenced in 2012.

## 2. Criminal History

Because the PSR recommended, and the Court found, that Mr. Haynes was a career offender, Mr. Haynes was placed in criminal history category VI pursuant to USSG § 4B1.1. (*See* PSR ¶ 64). And even without the career offender enhancement, the PSR assessed 14 criminal history points against Mr. Haynes, also placing him in category VI under that alternative formulation. (*See* PSR ¶ 63). As discussed above, the Court has determined that Mr. Haynes did not qualify as a career offender, and the accuracy of his criminal history category under the criminal history points calculation thus comes under scrutiny.

Included in Mr. Haynes's 14-point total was one point for the August 4, 1995 conviction for resisting arrest with violence that was mistakenly used in calculating his career offender status. (*Id.* ¶ 49). For the same reason that it was a mistake to count that conviction toward career offender status, it was also a mistake to include it in determining criminal history—that conviction was more than ten years old.

The PSR also assessed two criminal history points against Mr. Haynes for a conviction and sentence on a cocaine possession charge in Case No. 95-1446 in the Circuit Court, Brevard, County Florida. (*See id.* ¶ 50). Although charged in a separate case, the sentence on the cocaine charge—like the resisting arrest sentence discussed above—was initially a sentence of thirty months' probation imposed on August 4, 1995. (*Id.*). Mr. Haynes's probation was revoked in both cases at the same time, and a one-year prison sentence was then imposed on September 17, 1996. (*Id.*). As explained above,

pursuant to USSG § 4A1.2(e) and (k) this conviction was also too old to be scored in the calculation of criminal history points.

The Court also accepted the PSR's recommendation that two criminal history points be assessed pursuant to USSG § 4A1.1(e) because the offenses in Criminal Case 6:07-cr-54 were committed within two years of Mr. Haynes's release from custody in Criminal Case No. 6:00-cr-182-Orl-28JGG. (*See* PSR ¶ 62). Section 4A1.1(e) of the 2006 Guidelines Manual, which applied when Mr. Haynes was initially sentenced on September 10, 2007, provided for the calculation of criminal history "recency points" if a criminal defendant engaged in criminal conduct within two years after being released from confinement on another sentence. But Amendment 742 to the Guidelines, which became effective on November 1, 2010, "eliminated § 4A1.1(e)'s 'recency' points provision." *United States v. Bailey*, 453 F. App'x 901, 904 (11th Cir. 2011) (citing U.S.S.G. App. C, amend. 742). And although Amendment 742 is not retroactive, *see id.*, the Court resentenced Mr. Haynes in 2012, after the effective date of Amendment 742.

Thus, at resentencing in 2012, it appears that Mr. Haynes's criminal history points totaled 9 rather than 14, placing him in criminal history category IV instead of criminal history category VI. Resentencing counsel did not object to the incorrect calculation.

## B. Ineffective Assistance of Counsel

The Government acknowledges that Mr. Haynes should not have been designated a career offender with a category VI criminal history, but it makes a twofold argument that a remedy is not available under § 2255. First, the Government contends that resentencing counsel's conduct was objectively reasonable because the Court lacked jurisdiction to address any sentence other than that imposed as to Count Three in Criminal Case 6:07-

cr-54. Second, the Government insists that because the sentence imposed was within the statutory maximum of life imprisonment, Mr. Haynes cannot satisfy the prejudice prong of his claim of ineffective counsel.

### 1.  Conduct of Resentencing Counsel

The Government is correct in its assertion that the scope of the resentencing hearing was narrow.  The Court granted Mr. Haynes's initial § 2255 petition only to correct the illegal sentence imposed in Count Three of Criminal Case 6:07-cr-54.  But the Government's argument that the Court lacked jurisdiction to address the sentence imposed in Criminal Case 6:07-cr-73 is unavailing.  If the counting errors had been brought to the Court's attention, the Court could have corrected the error and repackaged the entire sentence under the "sentence package doctrine" described in *Watkins*. *Watkins*, 147 F.3d at 1297.  When a defendant challenges aggregate or package sentences, there is "no legitimate expectation of finality in any discrete portion of that sentence." *Id.* at 1297–98.  Under the sentence package doctrine, if a conviction or sentence is vacated for one or more related component counts, "the district court should be free to reconstruct the sentencing package (even if there is only one sentence left in the package) to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances." *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014).  Therefore, a "sentence package that has been unpackaged by a reversal is to be repackaged at resentencing using the guidelines and the § 3553(a) factors." *Id.* at 1016.  Here, resentencing counsel and the prosecutor persuaded the Court to repackage the sentence imposed for the counts in

Criminal Case 6:07-cr-54. And in doing so, resentencing counsel "invited" the Court to reimpose the 322-month career offender sentence. *Haynes*, 764 F.3d at 1309.

Although Criminal Case 6:07-cr-73 was not discussed at the resentencing hearing, obviously the sentences imposed at the initial sentencing for each offense in both cases were interrelated and considered as a part of an overall sentencing package. From the time Criminal Case 6:07-cr-73 was transferred, the cases were handled as one. Mr. Haynes entered guilty pleas in both cases simultaneously, and the PSR covered all counts in both cases. In fact, for guideline scoring purposes, Count Three in Criminal Case 6:07-cr-54 was grouped with all of the other counts in both Criminal Case 6:07-cr-54 and Criminal Case 6:07-cr-73 except for Count Two in Criminal Case 6:07-cr-54 (the 18 U.S.C. § 924(c) firearm count), which required a mandatory minimum consecutive sentence. The Court sentenced Mr. Haynes for all offenses in both cases at the same time, and the convictions in both cases were reflected in the same judgment. And the Court packaged the sentences imposed for each count in both cases to run concurrent with one another. The only reason the five offenses were charged in two indictments rather than one was that the Government decided to charge in that manner.

Under these circumstances, the Court had authority to repackage the entire sentence, including that imposed in Criminal Case 6:07-cr-73. *See, e.g., United States v. Mixon*, 115 F.3d 900, 902–03 (11th Cir. 1997) (concluding that when resentencing after vacating two convictions, the district court could properly adjust the sentences for unchallenged but related counts during a resentencing proceeding); *United States v. Beckham*, 202 F. Supp. 3d 1197, 1202–03 (E.D. Wash. 2016) (granting a § 2255 motion and scheduling resentencing on all counts under the sentence package doctrine). The

Seventh Circuit, in affirming a district court's decision at resentencing to correct an error in the base offense level made at the original sentencing, noted that "[i]t would be silly, we think, to say that a judge noting an incorrect base offense in the original sentence . . . is powerless to correct the error." *United States v. Smith*, 103 F.3d 531, 534–35 (7th Cir. 1996). Under the circumstances here, it would be equally silly to say that the Court could not repackage the sentences in both cases.

Resentencing counsel did not testify at the hearing on the second § 2255 petition. But it is easy enough to figure out what happened. Either counsel discovered the scoring errors and failed to bring it to the Court's attention, or counsel did not read the PSR carefully enough to spot the problems. Given the history of the case, the latter is the more likely scenario. Regardless, resentencing counsel was ineffective in failing to raise the argument that Mr. Haynes was incorrectly classified as a career offender and was incorrectly scored in the highest possible criminal history category even without the career offender enhancement. Counsel's performance was objectively unreasonable. *See United States v. Tucker*, 603 F.3d 260, 265 (4th Cir. 2010) (concluding that counsel's performance was objectively unreasonable where "information in the PSR was sufficient to alert counsel that" petitioner's prior conviction was a misdemeanor and therefore did not qualify him for ACCA enhancement); *United States v. Jones,* 114 F. Supp. 3d 310, 322 (D.S.C. 2015) (counsel's failure to object to the use of prior convictions as predicate violent felony convictions "was objectively unreasonable under prevailing professional standards") (quoting *Tucker*, 603 F.3d at 262); *see also Harrison v. Jones*, 880 F.2d 1279, 1282 (11th Cir. 1989) (noting that where an objection to the court's consideration of a prior conviction was "clearly available

to counsel at sentencing," counsel's lack of awareness of the law "and his failure to object at sentencing constitute ineffectiveness").

Unfortunately, resentencing counsel was set up by the mistakes repeatedly made by other participants in the case. Throughout the layered proceedings, none of the officers of the court discovered the errors contained in the PSR. Resentencing counsel likely assumed that the errors did not exist because the work of the Probation Office, defense attorneys, and prosecutors is so consistently good. Counsel took the case as counsel found it, and the Court and its officers share the blame because they also failed to notice the mistakes. At oral argument on the pending petition, counsel for the Government put it best, stating that to the extent a mistake was made, "it certainly was one that was shared by numerous assistant U.S. attorneys and defense counsel."

Perhaps resentencing counsel was the least culpable of the court officers to work on this case, including the Court itself. Nonetheless, because there was a resentencing with the opportunity to repackage the sentences imposed for each count in both cases, resentencing counsel had an obligation to ensure that the Court had the benefit of properly scored guidelines. Failing to meet that obligation resulted in the Court erroneously imposing career offender sanctions.

### 2. Prejudice

The Government argues that even if Mr. Haynes establishes that the conduct of resentencing counsel was objectively unreasonable, his claim still fails because he did not and cannot establish prejudice. Relying on *Spencer,* 773 F.3d 1132, the Government maintains that because the 322-month sentence is less than the statutory maximum, Mr.

Haynes cannot show prejudice from ineffectiveness of counsel. But in making this argument, the Government reads *Spencer* too broadly.

In *Spencer*, the court held that a prisoner may not relitigate an alleged misapplication of an advisory guideline calculation in a collateral attack on a final sentence. *Spencer,* 773 F.3d at 1135. The majority explained that even an erroneous classification of a defendant is not a fundamental defect resulting in a complete miscarriage of justice, so long as the sentence imposed is less than the statutory maximum. *Id.* at 1140. Even if a defendant is erroneously designated a career offender and receives the full brunt of the guideline enhancement, his sentence is lawful. *Id.* In coming to that conclusion, the majority observed that "any miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory. If the district court were to resentence [the defendant], the district court could impose the same sentence again." *Id.* But the difference between *Spencer* and this case is that *Spencer* did not involve a constitutional claim. *See id.* (concluding that Spencer's claim did not involve "an ancient right, nor [did] it raise constitutional concerns"). Here, on the other hand, Mr. Haynes's claim is grounded on his Sixth Amendment right to effective assistance of counsel.

In the context of Mr. Haynes's constitutional claim, the Government's argument that Mr. Haynes was not prejudiced by the error because his sentence was less than the statutory maximum is not persuasive. It discounts the significance of advisory guidelines in deciding what constitutes a reasonable sentence. While the Guidelines are no longer mandatory, *see United States v. Booker,* 543 U.S. 220 (2005), and a sentence is not presumed reasonable merely because it is within the guideline range, *see United States v. Hunt,* 526 F.3d 739, 746 (11th Cir. 2008), this Court still gives the Guidelines significant

weight. Indeed, in those instances where variances from the prescribed guideline range are imposed, the sentencing judge is required to state the reasons for the variance. *See* 18 U.S.C. § 3553(c)(2). Thus, when this Court imposes a sentence in excess of the top of the guideline range or if there is an objection to a downward variance, the Court provides those reasons for the variance in writing. Considering the information available to the Court at the time of the 2012 resentencing, this Court would not have varied upward.

Mr. Haynes has established that resentencing counsel's failures to object to his career offender designation and the alternative criminal history calculation were objectively unreasonable and that Mr. Haynes was prejudiced as a result.

### C. Fair Sentencing Act (FSA)

Mr. Haynes additionally claims that he was entitled to the application of the FSA during the 2012 resentencing proceeding and that counsel's failure to raise this matter resulted in prejudice. The FSA lowered the statutory minimum penalties for crack cocaine offenses under 21 U.S.C. § 841(b). *See Dorsey v. United States*, 567 U.S. 260, 269 (2012) (stating that the FSA "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum"); *United States v. Berry*, 701 F.3d 374, 377 (11th Cir. 2012). The FSA went into effect on August 3, 2010. Therefore, when Mr. Haynes was resentenced in 2012, counsel could have raised the matter and requested the Court to apply the FSA provisions to Mr. Haynes's new sentence. However, at no time during the resentencing proceeding did counsel bring the issue to the Court's attention. Consequently, the Court did not address the merits of any FSA claim Mr. Haynes might have had. Instead, the Federal Public Defender argued for the first time

on appeal from resentencing that Mr. Haynes's guideline range should be recalculated in light of the FSA. 764 F.3d at 1209–10. The Eleventh Circuit declined to address Mr. Haynes's argument on this issue. *Id.* The FSA claim is now raised for the first time in this Court as part of Claim One in Mr. Haynes's pending § 2255 petition.

When the Court resentenced Mr. Haynes in 2012, Mr. Haynes would have been eligible for relief under the FSA if he had possessed fewer than 28 grams of crack cocaine because "Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders." *Dorsey*, 567 U.S. at 281. And judges are instructed "to 'use the Guidelines Manual in effect on the date that the defendant is sentenced,' regardless of when the defendant committed the offense, unless doing so 'would violate the *ex post facto* clause.'" *Id.* at 275 (quoting USSG § 1B1.11). Furthermore, "when a sentence is vacated, there is no sentence in effect and resentencing is required." *United States v. Hinds*, 713 F.3d 1303, 1305 (11th Cir. 2013) (concluding that the FSA would apply in a resentencing proceeding following an initial pre-FSA sentencing).

The problem with Mr. Haynes's argument is that according to the PSR, he possessed more than 28 grams of crack cocaine and therefore was ineligible for the benefit of the FSA when he was resentenced in 2012. The weight of the crack cocaine Mr. Haynes possessed was set forth in the PSR. (*See* PSR at 5). The total that Mr. Haynes was responsible for was 72.55 grams of crack cocaine. (*Id.* ¶¶ 21, 23–26, 36). To the extent Mr. Haynes claims that resentencing counsel was ineffective in failing to argue for reduction of his sentence under the FSA, the claim must be denied.

## IV. Conclusion

In this case, it is undisputed that Mr. Haynes received an enhanced sentence because of errors made by the Court and its trusted officers. These errors undermined the process and produced an unjust result, yet the Government objects to the Court resentencing Mr. Haynes with the benefit of correctly calculated advisory guidelines. It does so with the explanation that so long as the sentence is within the maximum allowed by statute, any harm done by errors in the guideline score is outweighed by the need for finality.

This argument discounts the importance of the sentencing guidelines. The reason federal courts spend much time and ink getting the guidelines right is not merely to collect meaningful data. Correctly calculated guidelines inform courts in the performance of their most important function—the imposition of sentences that are fair and proportional to the crimes committed. As demonstrated by this case, arriving at correct findings of fact regarding the guidelines can be a complex undertaking, but sentencing judges rely on the expertise of probation officers, prosecutors, and defense lawyers to assist them in making accurate guideline calculations. The sentencing court must "begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process."[10] *Rosales-*

---

[10] As a practical matter, after *Booker* district courts—including this Court—understood that sentences within the guideline range would be considered reasonable and would survive appellate review. It was not immediately clear, however, when sentences outside the guideline range would pass appellate scrutiny. But as time passed, district judges were informed by appellate review of sentences imposed post-*Booker*. In the first two years following *Booker*—2006 and 2007—district judges sentenced above the guideline range in 1.6% and 1.5% of cases, respectively. U.S. Sentencing Comm'n, *Final Quarterly Data Report Fiscal Year 2006,* at Table 1; U.S. Sentencing Comm'n, *Final Quarterly Data Report Fiscal Year 2007,* at Table 1. By the time of resentencing in this case in April 2012, that percentage had increased slightly to 1.8%. U.S. Sentencing Comm'n, *Final Quarterly Data Reports 2011,* at Table 1. The percentage has continued to

*Mireles v. United States,* 138 S. Ct. 1897, 1904 (2018) (quoting *Peugh v. United States,* 569 U.S. 530, 541 (2013)).

The resources expended in the effort to make accurate findings are justified by the "basic aim" of the guidelines to ensure "similar sentences for those who have committed similar crimes in similar ways." *Booker,* 543 U.S. at 252. After all, "[i]n broad strokes, the public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Rosales-Mireles,* 138 S. Ct. at 1908 (quoting Josh Bowers & Paul H. Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility,* 47 Wake Forest L. Rev. 211, 215–16 (2012)). The integrity of the guidelines and the legitimacy of the system suffer when sentences are incorrectly enhanced and cannot be corrected. Mr. Haynes is entitled to be resentenced by a court taking into account accurately calculated advisory guidelines. This will likely result in a lesser sentence for Mr. Haynes, bringing the sentence in line with those imposed on similarly situated individuals guilty of the same crimes. More importantly, it will add to— rather than diminish—public confidence in the criminal justice system. When the principles of finality and justice are pitted one against the other as they are in this case, justice cannot be considered the slave of finality.

The Court finds that Mr. Haynes has established that his resentencing counsel provided ineffective assistance. Resentencing counsel was deficient for failing to challenge

---

increase over the years; the most recent complete data report reflects the highest percentage yet—2.9%. U.S. Sentencing Comm'n, *Final Quarterly Data Report Fiscal Year 2017,* at Table 8. This Court, aware of the circumstances of this case, would not have imposed a sentence in 2007 or 2012 greater than the properly calculated guideline range.

Mr. Haynes's career offender status and criminal history because Mr. Haynes does not qualify as a career offender and his criminal history was improperly calculated. Moreover, under the sentencing package doctrine, the Court had—or upon proper motion could have had—jurisdiction to resentence Mr. Haynes on each count of Criminal Case 6:07-cr-54 and Criminal Case 6:07-cr-73, taking into account correct advisory guidelines. Based on the circumstances of this case and this Court's significant experience, the Court would not have resentenced Mr. Haynes to 322 months in prison absent the career offender enhancement. Therefore, the relief requested under Claim One is granted, the Judgments in Criminal Case 6:06-cr-54 and Criminal Case 6:07-cr-73 will be vacated, and the Court will resentence Mr. Haynes with the benefit of correctly calculated guidelines. The Court further finds that Mr. Haynes's FSA argument and Claims Two, Three, and Four are without merit and are due to be denied.

### V. Adjudication

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Mr. Haynes's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) is **GRANTED** with respect to Claim One. The sentences and Judgments in Criminal Case Numbers 6:07-cr-54-Orl-28GJK (Doc. 110 in that case) and 6:07-cr-73-Orl-28KRS (Doc. 89 in that case) are **VACATED**. The motion is **DENIED** with regard to Claims Two, Three, and Four.

2. The United States Probation Office is **directed** to prepare an updated Presentence Investigation Report. Upon receiving the report, the Court will set a date for a new sentencing hearing by separate order.

3. The Clerk of Court is directed to enter Judgment and close this case.

4.     The Clerk of Court is also directed to file a copy of this Order in Criminal Case Numbers 6:07-cr-54-Orl-28GJK and 6:07-cr-73-Orl-28KRS and to terminate the motions to vacate, set aside, or correct sentence (Criminal Case 6:07-cr-54, Doc. 147; Criminal Case 6:07-cr-73, Doc. 115) pending in those cases.

**DONE** and **ORDERED** in Orlando, Florida, on August _31_, 2018.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties